Hold on, hold on, Madam Clerk. Please don't call the case until we're ready. Please call the next case for argument. Case number 20-2852 from the District of Minnesota, R.J. Reynolds Tobacco Company, et al. v. City of Edina, et al. City of Edina, I believe. Isn't that right, Mr. Kendall? That is correct, Your Honor. All right, Mr. Francisco, we'll hear from you first. Judge Colleton, and may it please the court, under the Tobacco Control Act, state and local governments have broad authority to regulate the sale of tobacco products. But the one thing they can't do is completely prohibit their sale because they don't think federal tobacco product standards are strong enough for two reasons. First, a flavor ban is a paradigmatic tobacco product standard. Indeed, one of the only standards that Congress itself adopted in the text of the act was a ban on flavored cigarettes except for menthol flavors. Because the city's ban is broader than the federal ban, it falls four square under the preemption clause, as the district court correctly concluded. Secondly, it's not saved by the savings clause because the act's preemption provisions carefully distinguish between requirements relating to the sale of tobacco products on the one hand and requirements prohibiting their sale on the other. The savings clause saves the first type of requirement but not the second, and so it doesn't save the city's absolute ban. The city's contrary position, in contrast, nullifies Congress's distinction between these two types of requirements and renders the preemption clause a dead letter because under the city's view, they can simply ban the sale of any product that doesn't meet their preferred product standards. But as the Supreme Court said in the national meat case, that would make a mockery out of the act's preemption provisions. Now, I'd like to emphasize that under the city's position, they're not nullifying the preemption clause just with respect to tobacco product standards. They're nullifying it with respect to everything listed in that clause. Under their position, they could, in fact, prohibit the sale of any product that doesn't meet the city's preferred premarket review requirements or good manufacturing standards or modified risk tobacco product requirements. Take the labeling requirement. They could prohibit the sale of any cigar or e-cigarette that doesn't have the city's mandated warning label on it, even if it has the FDA mandated warning label on it. All they have to do is frame their law as a ban on a sale of a product that doesn't meet the city's preferred requirements. And if you multiply that by the thousands of cities, towns, and villages across the country, I think the conflict with the federal regime is manifest. So our interpretation is the only one that both gives meaning to all of the statute's key provisions and doesn't lead us down this road to regulatory chaos. How does your reading give meaning to the prohibition part of the preservation clause? What prohibitions on sale would be permissible? Sure. For a couple of reasons, your honor. First, the preservation clause doesn't just apply to state and local governments. It also applies to Indian tribes, to the military, to federal agencies, and they're not subject to the preemption clause. So they can adopt whatever tobacco product standards they want, including flat out prohibition. So for that reason alone, it's not superfluous. Secondly, under our interpretation, the city still does have broad regulatory authority. So they can do the types of things they've traditionally done for decades in this country. They can establish licensing regimes. They can raise the minimum age of purchase. They can restrict where products can and can't be sold. But the one thing they can't do is absolutely prohibit the sale of a product because it doesn't meet the city's preferred tobacco product standards. Otherwise, you are nullifying the distinction that the statute itself draws between two types of requirements, and you're completely nullifying the preemption clause. So whatever else you think of our position, it's the only one that gives meaning to the specific language that the Congress here adopted, and it's the only one that doesn't completely nullify the preemption clause, and it's the only one that doesn't lead down the road where we could be required to comply with the premarket review requirements, modified risk tobacco requirements, labeling requirements of every city, town, village, and state throughout this country. And so I think ours is the only interpretation that makes sense of the statute as a whole. So does that mean the only effect of the prohibition clause or provision in the preservation clause would be with respect to federal government and tribes? The state cannot prohibit anything? I think that's the principal effect, Your Honor. I'd make one other point on that. We don't actually think they can completely ban the sale of tobacco products. They do think they can completely ban the sale of tobacco products. If they were right, then that would be another type of prohibition that would be captured by the preservation clause, and I can give you a hypothetical that helps illustrate that point. Suppose Congress passes a law that says state and local governments can't regulate the properties of automobiles. Arguably, they could prohibit the sale of all automobiles if it didn't have anything to do with any particular property, but the one thing they couldn't do is ban the sale of automobiles that didn't meet the city's preferred fuel emission standards because fuel emission standards are a paradigmatic property. Here, even if you think they could ban all cigarettes, we don't, but even if you think that they could, the one thing that they can't do is ban the sale of cigarettes based on their flavor because flavor is a paradigmatic property of a cigarette. Here, we know to a metaphysical certainty that a flavor ban is a tobacco product standard because Congress specifically said it was a tobacco product standard. It's one of the only tobacco product standards written into the text of the law itself. The city's ban is broader than the federal ban, and so it falls four square under the preemption clause. The only real question, in my view, is whether it's saved by the savings clause, and it's not because the savings clause doesn't save outright prohibitions. Now, the city's principal argument is to attempt to draw this manufacturing and sales distinction within the preemption clause itself, and that's something that some of the other courts of appeals have done as well. I think that the court below got it exactly right to say that there is absolutely no textual basis for that kind of distinction. The statute specifically says that tobacco product standards include the regulation of tobacco product properties, and flavor is a paradigmatic property of a tobacco product. That's why one of the only tobacco product standards written into the law is a ban on flavors. It's also why the FDA, in its 2018 illicit trade report, specifically says, and here I'm quoting, it's considering establishing a product standard prohibiting the characterizing flavors, so all of that is part of a product standard. I think it's also why the Supreme Court essentially rejected this argument in the engine manufacturer's case, where it held that the word standard in a similarly worded statute applied to the final product, not how the product was made. It's true that you can enforce a standard in different ways. You can enforce it through a sales ban or through a manufacturing ban or through a distribution ban, but it doesn't change the fact that what you're enforcing is a standard. Here, we know with certainty that a flavor ban is a tobacco product standard because Congress said it was. We know for certainty that the city adopted a ban that's broader than the federal one, and therefore, it's clearly preempted by the preemption clause. The reason it's not saved by the savings clause is because this court has an obligation to give meaning to all of the words that Congress chose to use. One set of those words is its careful distinction between requirements relating to sales on the one hand and prohibiting sales on the other. The preservation clause refers to both, gives state and local governments and others the power to do both. The preemption clause says state and local governments can't do anything. They can't adopt any requirement if it's about a tobacco product standard, and it's in addition to and more stringent than federal standards. The savings clause then only saves one type of requirement. It specifically saves requirements relating to the sale of tobacco products, but it does not restore the authority to adopt requirements absolutely prohibiting their sales. The one thing they can't do is absolutely prohibit the sale of tobacco products because they don't meet the city's preferred tobacco product standard. I have one more question for you. One thing that seemed to bother Judge Schiltz is what is a prohibition? I noticed you keep adding the word absolutely before prohibit, and I wonder if that means you think prohibit means absolutely prohibit, and if so, why? Well, Your Honor, I think that it doesn't matter here because we have an absolute prohibition. You have to give some meaning to the distinction between requirements relating to sales and minimum. What that means is you can't absolutely prohibit sales because then you've completely collapsed the distinction between those two types of requirements. I think the more fundamental error that Judge Schiltz made was his focus on the word requirements standing alone. I agree that the word requirements standing alone can sweep in prohibitions, but the statute distinguishes between two types of requirements, those relating to sales and those prohibiting sales. Your Honor, what about the fact that relating to or prohibiting in the preservation clause modifies law, rule, regulation, or measure? Your Honor, I think that if you look at these statutes as a whole, that's just a shorthand for the word requirement. You can take that phrase and plop it in for requirement anywhere in the statute or vice versa. They're just not repeating the entire phrase every single time, but I think it's quite clear that what they're distinguishing is between two different sets of laws, rules, regulations, and other things, two sets of requirements, those requirements that relate to sales on the one hand and those requirements that prohibit sales on the other. Ours respects the distinction, theirs nullifies the distinction, and I think just as importantly, theirs completely nullifies the preemption clause. They can do anything they want under the preemption clause as long as they call it a prohibition on the sale of something that doesn't meet the city's preferred requirements. You can plug in any one of the listed things in the preemption clause into that sentence, and they're going to be allowed to do it simply by framing their law as a sales ban. The Supreme Court was quite clear in the national meat case and in engine manufacturers that we don't read these types of preemption provisions to be empty vessels. Just to take a step back, I'd also like to explain why I think that our rule makes perfect sense. We have decades of state and local regulation of tobacco products in this country, and our interpretation respects that history. Under our interpretation, they retain the traditional authority that they have been exercising for decades in this country, including the authority to adopt wholesale licensing regimes to restrict where products can and can't be sold. They can say you can't sell these products near schools. They can raise the age of purchase up to 25 if they want. One of the common regulations that state and local governments adopt is requiring the products to be stored away in locked cases so they can't be accessed by underage persons. Our position respects all of this traditional authority that state and local governments have historically exercised in this country. The one thing they can't do is absolutely prohibit the sale of a tobacco product because they don't think the federal government's tobacco product standards are strong enough, or because they don't think the product meets the city's own preferred tobacco product standards. That runs four square into the preemption clause, and it's not saved by the savings clause. If I could reserve the balance of my time, your honor. Seeing no other questions, you may. Thank you very much for your argument. Mr. Kendall, we'll hear from you. Thank you, your honor. May it please the court. I'm David Kendall on behalf of the city of Edina. The city of Edina takes seriously its duty to protect the health and safety of its residents. Tobacco use, particularly among youth and adolescents, is perhaps the single most significant threat to public health in the United States. The city of Edina, in particular, received information from students, doctors, medical experts, state agencies concerned about the public health situation in Edina. The city responded and the Tobacco Control Act is a three-part structure, and the city prevails on this question in three different ways. First, local sales regulations are expressly preserved by the preservation clause. Second, the local sales regulations are not preempted, or this local sales regulation is not preempted by the preemption clause. And third, to the extent you find this local sales regulation is preempted, it is saved by the savings clause as the district court found. Counsel, would you address your colleague's argument that your interpretation of the savings clause essentially nullifies the preemption clause? Yeah, I submit it does not. There's a separate analysis, and we do make a distinction between manufacturing product standards and local sales regulations. There are certainly local sales regulations that could rise to the level of effectively dictating a manufacturing product standard. This regulation does not do that, but if so, that type of regulation would be preempted and not saved. So there's a three-part analysis. Prohibitions, complete prohibitions are allowed under the preemption clause. This is not a complete prohibition, but it would be allowed under the preservation clause. But then moving on to the preemption clause, product manufacturing standards in the guise of local sales regulations would be preempted, and then moving beyond that, they could be saved unless they rise to that level. So local regulation of tobacco has been in place for over 100 years since Austin versus Tennessee, and the Tobacco Control Act was enacted against that backdrop with the act beginning with the recognition of express preservation of local power to regulate health and safety and to prohibit the tobacco sales outright. The preservation clause preserves local regulation, and the preemption clause, your honor, I think it's important to note directs all of its comments and all the words in that clause are relating to manufacturing. It speaks to pre-market review, adulteration, misbranding, labeling, registration, good manufacturing standards, and modified risk tobacco products, which are those products which are deemed by the FDA after scientific testing to meet that standard. So all of these terms apply to the manufacturing process. This is before the completed product enters the stream of commerce. The city of Edina's regulation deals with a point of sale regulation based on the ordinary consumer and their ability to purchase products at a retail level. The city of Edina does not propose to engage in scientific analysis or tear apart the product, use a spectrometer or chemical testing or any other scientific measures to determine the exact ingredients or constituents of the product. This is based on a purely a local retail finished product regulation. But if you believe that the savings, I'm sorry, if you believe that the preemption clause does apply, the preemption clause does not apply to requirements relating to sale. So that's how local regulations which do not touch those standards address the are saved by the savings clause. One cannot view every local sales regulation as an indirect regulation of manufacturing. Now we take the position similarly that such a reading would collapse the distinction between sales and product regulations, would render superfluous the statute's three-part structure, and would render meaningless the preservation clause's requirement that the acts not be construed to limit local sales regulations, including up to prohibition. The preemption clause has to do with nationwide manufacturing standards and not with local sale regulations. And the terms mentioned in the preemption clause all relate to manufacturing. If you look in additional definitions within the statute, you find pre-market review is defined as methods used in and facilities and controls used for the manufacturer processing and when relevant packing and installation of such tobacco products. Adulteration and misbranding applies to misbranded tobacco products are those that were not manufactured, prepared, propagated, compounded, or processed in establishments duly registered under the Tobacco Control Act. Labeling, which counsel tried to distinguish, similarly is a manufacturing process carried out by the manufacturer at the plant before the product enters the commerce stream. And labeling under 21 CFR 1140.3 is defined as, and it defines the manufacturer as any person including a repacker or relabeler who manufactures, labels, a finished tobacco product. Similarly registration, another preempted function, refers to every person who owns or operates any establishment in any state engaged in the manufacture, preparation, compounding, or processing of a tobacco product. So finally, Your Honor, I'd like to address implied preemption because there was a recent development regarding an announcement by the FDA on April 29th. R.J. Reynolds' primary argument on implied preemption revolved around the idea that regulation of characterizing flavors including menthol does not stand as an obstacle to the clear and manifest intent of Congress. Their argument is that the regulation of menthol did stand as an obstacle to the clear intent of Congress. That was not true before the FDA announcement and it's even less true now. The district court rejected this argument because the argument from the tobacco companies that the FDA has not taken action to prohibit menthol cigarettes and therefore local action is preempted was never true. The federal government has, through inaction, left countless areas to state regulation. There is no federal preemption in a vacuum and inaction by the federal government is not equivalent to preemption. In fact, it turned out the FDA's decision was the exact opposite. The FDA's press release states studies show that menthol increases the appeal of tobacco facilities and progression to regular smoking, particularly among youth and young adults. So the FDA's move to consider a rule to ban menthol cigarettes and characterizing flavors in cigars underscores exactly what the city of Edina found and why Edina acted to pass its ordinance. The fact that flavored tobacco products increase the appeal of smoking to young adults and youth in general. The decision of a federal agency not to issue the nationwide regulation is not equivalent by a decision by Congress that state and local governments may not be allowed to regulate. We submit to the court that states must be allowed to function as laboratories of democracy and respond to local threats to public health and safety. And this is similar, the court might note, to the tobacco 21 initiative where originally the states and local governments began passing that regulation and ultimately it was adopted by the federal government. The fact that the FDA has recently announced an intent to regulate menthol flavor in cigarettes demonstrates that the city of Edina's local ordinance does not stand as an obstacle to federal policy and is not impliedly preempted. There's some hypotheticals in R.J. Reynolds' brief regarding, well first let me address the issues regarding National Meat Association and engine manufacturers. National Meat Association, first of all, neither of those two cases dealt with a statute that had an express preservation clause or express savings clause as we have here. The analysis must focus on the plain language of the statute and analogies cannot be drawn from cases interpreting different has a preservation clause and a savings clause. Further, the regulation of national meats dealt with something that could only be enforced by being present on the manufacturing floor and it was essentially a manufacturing requirement. It dealt with a sale regulation prohibiting sale of meat from non-ambulatory animals. The only way to determine if the animal was ambulatory would be to be present on the manufacturing floor and controlling the ingredients placed into the product. That is the exact opposite of what Edina is doing with this ordinance which is regulating the final finished product and not dictating a manufacturing standard. Neither engine manufacturers nor National Meat Association dealt with statutes which had this express preservation clause or this are clearly distinguishable. As far as hypothetical arguments about Edina could regulate a product by refusing to sell a particular amount of nicotine, that was a hypothetical address at the district court and again in RJ Reynolds' brief. That is not what Edina proposes to do here but even if it did, then that would be subject to, as the district court observed, the typical implied preemption analysis. It would not be an argument regarding the savings clause, rather it would be an argument about whether that attempt to regulate tobacco or nicotine content through a sales regulation rises to the level of a national product standard which would then be an obstacle to the intent of Congress. Edina's regulation clearly does not. It regulates only the sale of the finished product and does not rise to the level of dictating what manufacturers can do on the manufacturing floor or what they can introduce into the commerce stream. It deals only with products sold in the city based on what the ordinary consumer can discern but their five senses and not with scientific analysis of the constituents or ingredients within the product. So I see my time is beginning to run short and I will just submit to the court. Every other court in the United States that has addressed this issue has reached the same conclusion as the district court in this case but it's reached it on a different ground and we submit that the district court respectfully got this one wrong with respect to the preservation clause. This ordinance is preserved by the preservation clause but the city prevails ultimately in three ways. If you don't believe it is preserved by the preservation clause, then it is still saved by the savings clause. The three-part structure of the statute must be given effect. All three parts must be given effect. First there is an explicit preservation of local sales regulations including outright prohibitions. This is not a prohibition. It doesn't ban all classes of you know all cigarettes or all chewing tobacco or all cigars. It doesn't ban any products which have a tobacco flavor. It doesn't ban any products which have no flavor. It only bans products with flavors other than tobacco. That is expressly allowed under the preservation clause but if you don't find that to be true, it is still saved under the savings clause because it does not rise to the level of a manufacturing product standard and does not give rise to implied preemption. I would just mention that this is a local sovereignty issue. The city of Edina is in a particularly good place to know what its local public health situation is. There may be other places in the country where youth addiction to nicotine through flavored tobacco products is not a public health crisis at this point. Edina received extensive evidence that it is a public health issue in Edina. They have unique perspective on that. They should have the ability to respond to that at a local level as a matter of state sovereignty and we ask the court to uphold the ordinance on the basis that it is preserved. It is not preempted and if preempted it is saved. It is not impliedly preempted and based on Austin versus Tennessee and 100 years of local tobacco regulation, it is permissible and was had been for the Austin versus Tennessee and in the future based on the congress's intent not to upset that long-standing structure of local regulation of tobacco products. Thank you, your honor. Very well, thank you for your argument. Mr. Francisco, I will hear from you in rebuttal. Judge Colleton, three points, four if I have time to get to the fourth. First, Judge Kobus, your first question to my friend on the other side was why doesn't his position nullify the preemption clause? Why doesn't his interpretation of the savings clause nullify the preemption clause? What I understood him to say is that because the argument and there is frankly no basis in the text of the savings clause for drawing a distinction between manufacturing and sales. The savings clause says that the things that are saved are any requirements relating to the sale of tobacco products. If as they claim the savings clause is so all-encompassing, it does nullify the preemption clause because there is no basis to draw any of those distinctions in the savings clause other than the distinction between requirements relating to sales on the one hand and requirements prohibiting sales on the other. That leads me to my second point. The place where they've always drawn the manufacturing and sales distinction and where the other courts of appeals have drawn that distinction is not in the savings clause, it's in the preemption clause. There's simply no textual basis in the preemption clause to do that. My friend points out that the preemption clause refers to things like labeling and modified risk products and from that tries to infer that it's limited solely to manufacturing regulations. Well, one, he's wrong about the meaning of those words and two, it also doesn't matter. He's wrong about the meaning of those words because labeling and modified risk tobacco products aren't just limited to manufacturing. Labeling requirements, for example, apply to importers who have to put on labels at the point of import long after manufacturing is over. Labeling also applies to statements that we make on our websites, has nothing to do with manufacturing. Modified risk tobacco products generally goes to how do we describe a product, not how we make it. We could have had a product on the market for 10 years, not changed a thing. The moment we'd start describing it as safer than other products, it becomes a modified risk product. It also doesn't matter because here we know to a metaphysical certainty that a flavor ban is a tobacco product standard because Congress said that it was. And since the local ban is broader than the federal one, it's clearly preempted. And finally, Judge Colleton, you had asked me whether I thought that the word prohibit includes absolute prohibition. What I would say is that at a minimum, it includes this, that. This is the easiest of cases because here we have an absolute prohibition. What do you mean by absolute? It's not absolute in the sense that it doesn't ban all tobacco. It's absolute in that it bans an entire category of products based on its properties. That's the one thing that the Savings Clause says that you can't do. And in order to save that, you do have to nullify the distinction between the two types of requirements relating to sales and prohibiting sales because you've taken a category of products based on the city's preferred property, a flavor ban, you've banned an entire set of products based solely on that property. There's not a single tobacco product that has flavor that can be sold in the city of Adena. Every single one of those is banned, and that is an absolute prohibition. So whatever else you think about the interplay between those two sets of requirements, the one thing that it has to prohibit if you're going to give meaning to the law is that type of absolute and all-encompassing ban. All right, I guess you don't have time for your fourth point, but we appreciate your argument. I'll make it if you'd like me. Your time has expired and we appreciate both counsel appearing today. The case is submitted and the court will file an opinion in due course. Thank you.